[988 NYS2d 50]

In the Matter of EDNA SHANNON, Deceased.

First Department, June 17, 2014

### APPEARANCES OF COUNSEL

*Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Einiger, LLP*, Lake Success (*Sarah C. Lichtenstein* of counsel), for appellant.

*Robert F. Meehan*, White Plains (*Eileen Campbell O'Brian* and *James Castro-Blanco* of counsel), for respondent.

### OPINION OF THE COURT

ACOSTA, J.

On this appeal we are called upon to decide whether Eastchester Rehabilitation & Health Care Center was entitled to be paid, after Edna Shannon's death, for services rendered to her during her life, from assets controlled by her guardian pursuant to Mental Hygiene Law § 81.44 (d). Westchester County Department of Social Services (DSS) maintained that it was a preferred creditor and therefore that its claim had priority over Eastchester's claim. We hold that since Eastchester's claim arose before Shannon's death, and section 81.44 (d) allows the guardian to retain assets to secure known claims, Eastchester's claim has priority over that of DSS, which arose after Shannon's death.

Eastchester, a skilled nursing facility, admitted Edna Shannon into its care in 2005. In 2008, due to Shannon's need for assistance, and concerns about the proper handling of her finances by third parties, Eastchester commenced a proceeding pursuant to Mental Hygiene Law article 81 to have a guardian appointed

for her person and property. It also filed an application for medical assistance for Shannon's nursing home costs. In 2009, DSS determined that Shannon was eligible for Medicaid, effective September 1, 2008. By order and judgment entered April 24, 2009, Supreme Court appointed Family Service Society of Yonkers as her guardian. Among other things, the court conferred on Family Service Society the authority to pay Shannon's nursing home expenses and to pay bills after her death. Shannon died in December 2011 at age 87.

On June 2, 2010, approximately a year and a half before Shannon died, Eastchester filed a claim with Family Service Society seeking $164,208 for services that Eastchester had provided that were not covered by Medicaid. By letter dated June 2, 2010, Eastchester also submitted the claim for filing with Supreme Court, Bronx County.

By order entered November 17, 2010, the court granted Family Service Society's motion for an order authorizing the sale of Shannon's home in New Rochelle for approximately $300,000. The court stated that there was no likelihood that Shannon would be able to return to living independently in her home, and that "the sale of this house is warranted so that the proceeds from the sale can be used to pay for her long term care."

The sale closed in November 2010, and the net proceeds, $297,882.20, were deposited into Family Service Society's guardianship account for Shannon. By order entered February 28, 2011, the court confirmed the sale.

By letter dated September 8, 2010, DSS had advised Family Service Society that Shannon owed DSS $166,005.63 in medical assistance payments, and by letter dated January 28, 2011, it had advised that she owed $192,352.47. DSS did not request payment at that time.

After Shannon's death, by letter dated July 5, 2012, DSS informed Family Service Society that it was asserting a preferred claim pursuant to Social Services Law § 104, and that the "updated lien amount" was $271,661.62. DSS requested that when the "estate is ready for distribution," Family Service Society issue a check to DSS for that amount.

By order to show cause dated August 6, 2012, Family Service Society commenced a proceeding to settle its final account as guardian of Shannon's person and property. Family Service Society listed Eastchester as a claimant for $164,208, and DSS as a claimant for $166,005.63.

Eastchester opposed Family Service Society's petition and argued that it had priority over DSS because its claim of $222,650 for the period of care from September 1, 2006 through August 31, 2008 accrued before DSS's claim against the estate began to accrue. Eastchester argued that DSS had no statutory lien against Shannon's home (the source of the remaining funds in the estate) when it was sold, and that DSS should not receive any preferred creditor status.

DSS also opposed the petition, as well as Eastchester's position, and argued that Shannon was a Medicaid recipient from approximately September 1, 2008 until her death on December 10, 2011. DSS stated that it had provided assistance to Shannon in the amount of $271,661.62. DSS argued that it was a preferred creditor pursuant to Social Services Law § 104, and that because Eastchester had failed to reduce its claim to a judgment, Eastchester was a general creditor over which DSS had priority.

The court agreed with DSS and determined that, after $14,400 was paid to Family Service Society for fees incurred as Shannon's guardian, $188,599.27 remained in the estate, of which $9,000 would be paid in legal and court fees, and the balance would be turned over to DSS in satisfaction of its Medicaid lien. We now reverse.

As Eastchester was to be paid out of the guardianship account before any funds passed to the estate, its claim had priority over DSS's claim. Mental Hygiene Law § 81.44 (d) provides that, within 150 days of the death of an incapacitated person, the guardian must serve on the personal representative of the decedent's estate, or if none, the public administrator or chief fiscal officer, a statement of assets and notice of claim, and, "except for property retained to secure any known claim, lien or administrative costs of the guardianship," deliver all guardianship property to the personal representative, public administrator, or chief fiscal officer (emphasis added).

Indeed, consistent with section 81.44 (d), the order and judgment appointing the guardian authorized Family Service Society to "[a]pply [Shannon's] resources and income, if any, toward her outstanding and accruing nursing home expenses," and to "[p]ay bills after [Shannon's] death . . . if incurred prior to said death, if authority to pay any such bills would otherwise have existed." In addition, the court order that authorized the sale of Shannon's home stated that the sale was warranted "so that the proceeds from the sale can be used to pay for her long term

care." Although the court did not specifically refer to Eastchester, as opposed to DSS, DSS concedes that it did not assert a claim during Shannon's lifetime but asserted a claim against the estate only.

Thus, while Eastchester filed a notice of claim against the guardianship account on June 2, 2010, DSS did not send a claim letter to Family Service Society until July 5, 2012, after Shannon's death, asserting a claim against the estate pursuant to Social Services Law § 104.

Unlike the claims in *Matter of Swingearn* (59 AD3d 556 [2d Dept 2009]), which were competing claims during the decedent's lifetime for benefits incorrectly paid (*see* Social Services Law § 369 [2] [a] [i]), and the claims in *Matter of Pierce* (106 AD2d 892, 892 [4th Dept 1984], *lv denied* 64 NY2d 609 [1985]), which were competing claims against the estate, Eastchester's claim accrued during the decedent's lifetime, against the guardianship account, with no competing creditors. Thus, Eastchester should have been paid before any funds passed to the estate. DSS, as a preferred creditor pursuant to Social Services Law § 104, had a priority claim only against the estate. Contrary to the court's conclusion, it was irrelevant that Eastchester had not reduced its lien to a judgment, which would have given it priority over competing creditors, because DSS had no viable competing claim against Shannon's guardianship account.

Contrary to the dissent, nothing in Mental Hygiene Law § 81.44 (d) and (e) "limit[s] the guardian's right to retain property equal in value only to the expenses connected with the administration of the guardianship, such as those itemized in the guardian's petition for a final accounting." Had the legislature intended that result, it would have clearly stated that the guardian could retain assets to secure any known claim or lien only insofar as it was associated with administrative expenses. Instead, consistent with its stated justification "to facilitate the transition between a guardianship for an incapacitated person and an estate after the death of such incapacitated person" (Sponsor's Mem, L 2008, ch 175, 2008 NY Legis Ann at 127), the legislature gave the guardian broader rights to pay off *"any known claim,* lien or administrative costs of the guardianship pursuant to subdivision (e) of this section" (Mental Hygiene Law § 81.44 [d] [emphasis added]). In other words, in addition to serving upon the personal representative of the estate "a statement of assets and notice of claim" within 150 days of the incapacitated person's death, section 81.44 (d) authorizes the

guardian to pay off any known claims. This broader construction is consistent with Mental Hygiene Law § 81.44 (a) (4), which defines "[s]tatement of assets and notice of claim." Specifically, in detailing the information to be included in a statement of assets and notice of claim, section 81.44 (a) (4) provides that, in addition to some identifying information (such as a caption and index number), the statement must contain

> "a description of the nature and approximate value of guardianship property at the time of the incapacitated person's death; with the approximate amount of any claims, debts or liens against the guardianship property, including *but not limited to* medicaid liens, tax liens and *administrative costs*, with an itemization and approximate amount of such costs and claims or liens" (emphasis added).

Thus, section 81.44, read as a whole, does not limit "any claims" to administrative costs. In fact, it does just the opposite; it lists administrative costs as a type of claim that the guardian can pay off. Section 81.44 (e), which states in relevant part, "the guardian may retain, pending the settlement of the guardian's final account, guardianship property equal in value to the claim for administrative costs, liens and debts," does not limit the guardian's authority pursuant to section 81.44 (d) to retain property to pay off any known claims or liens in addition to administrative costs.

In light of our conclusion, we need not reach Eastchester's remaining contentions.

Accordingly, the order of the Supreme Court, Bronx County (Howard H. Sherman, J.), entered on or about February 7, 2013, which, to the extent appealed from, directed petitioner to turn over to respondent Westchester County Department of Social Services the balance of the funds remaining in the guardianship estate of Edna Shannon, an incapacitated person now deceased, should be reversed, on the law, without costs, and petitioner is directed to turn over DSS's share of the balance of the guardianship account to respondent Eastchester Rehabilitation & Health Care Center. The appeal from the order, same court and Justice, entered on or about May 30, 2013, which denied Eastchester's motion to reargue, denominated a motion to reargue and/or renew, should be dismissed, without costs, as taken from a nonappealable paper.

FREEDMAN, J. (dissenting). I respectfully dissent, and would affirm Supreme Court's determination that the Medicaid lien

imposed by Social Services Law § 104 (1) takes precedence over a claim by the general creditor, respondent Eastchester Rehabilitation & Health Care Center. Once Edna Shannon died, all funds other than those reserved for the administration of her guardianship in accordance with Mental Hygiene Law § 81.44 passed to her estate (SCPA 103 [19]). Accordingly, Supreme Court properly directed that the decedent's guardian turn over to respondent Westchester County Department of Social Services (DSS) all of the remaining funds in the guardianship estate after paying administrative fees, as expressly provided for by Mental Hygiene Law § 81.44.

This dispute over which of two creditors has the superior claim to the assets of the decedent's estate arises from this proceeding to settle the final account of her guardianship. The relevant facts are as follows: On December 13, 2005, the decedent, then 81 years old, moved from her home in New Rochelle, New York, to Eastchester Rehabilitation & Health Care Center. She resided at Eastchester until November 2008, when the facility commenced a proceeding under Mental Hygiene Law article 81 for the appointment of a guardian of her person and property because she suffered from dementia.

In January 2009, Supreme Court adjudged the decedent an incapacitated person, and in an April 2009 order appointed petitioner, Family Service Society of Yonkers, her guardian. The order authorized the guardian, among other things, to "[a]pply the [decedent's] resources and income . . . toward her outstanding and accruing nursing home expenses" and "[p]ay bills after the death of the [decedent] if incurred prior to said death, if authority to pay any such bills would otherwise have existed." The order also authorized the guardian to sell the decedent's house, subject to court approval.

In December 2008, Eastchester, on the decedent's behalf, applied for and was granted Medicaid benefits to cover the decedent's care. DSS agreed to pay Eastchester $764 per month for September through December 2008 and $816 per month for January through August 2009. These amounts were less than Eastchester's full charge.

In September 2010, DSS notified the guardian that the decedent owed the agency about $166,000 for its Medicaid assistance. On November 25, 2009, Eastchester discharged the decedent to another nursing facility in Somers, NY, and in June 2010, Eastchester filed a notice of appearance and proof of claim in the guardianship proceeding seeking about $164,000 for the

balance due for the decedent's care that Medicaid had not covered.

In October 2010, the guardian sought, on notice to both DSS and Eastchester, and obtained court approval to sell the decedent's house to pay for her ongoing long-term care. The guardian deposited the net proceeds of the sale, about $298,000, into a separate guardianship account. Shortly thereafter, DSS notified the guardian that the amount the decedent owed Medicaid had increased to about $192,000.

The decedent died on December 10, 2011, at age 87. In a July 2012 letter to the guardian, DSS stated that Medicaid assistance to the decedent totaled about $272,000 and that the agency was asserting a preferred lien against the estate assets under Social Services Law § 104.

In August 2012, the guardian moved for an order approving and settling the guardianship's final account. In its petition, the guardian itemized fees and disbursements connected with the administration of the guardianship, which totaled about $82,000.[1] The final account stated that about $189,000 remained in the decedent's estate, most of which derived from the proceeds of the house sale.

The guardian stated that it had advised both DSS and Eastchester that their total claims exceeded the remaining amount and that it would not pay either unless they agreed to an apportionment. Each respondent contended that its claim had priority over the other's, and the guardian asked the court to apportion between respondents the assets remaining after the administrative costs of the guardianship were paid.

The majority finds that either the guardian should have paid Eastchester from the guardianship account while the decedent was still alive or, in accordance with Mental Hygiene Law § 81.44, the guardian should have retained the funds to pay Eastchester in the guardianship account instead of transferring them to the decedent's estate.

However, while the decedent was still living, both respondents had presented the guardian with claims against her assets to

---

1. Those costs included court-approved fees for the guardian, its attorneys, and the court examiner, related expenses in connection with the administration of the guardianship, the maintenance costs for the decedent's home before its sale, legal and other fees and expenses connected with the sale, court-ordered fees in connection with the guardianship proceeding, the net available monthly income charge to the decedent in connection with Medicaid, and miscellaneous expenses for the decedent's personal needs.

cover her care. The appointment order had authorized but not directed the guardian to pay the decedent's debts during her life. A guardian's authority terminates with the incapacitated person's death (Mental Hygiene Law § 81.36 [a] [3]). Upon the decedent's death, any funds in the guardianship account that remained after administrative fees of the guardianship were paid automatically passed into the decedent's estate (SCPA 103 [19]).

Social Services Law § 104 (1) specifically states:

> "A public welfare official may bring action or proceeding against a person discovered to have real or personal property, or against the estate or the executors [or] administrators . . . of a person who dies leaving real or personal property, if such person . . . received assistance and care during the preceding ten years . . .

> "In all claims of the public welfare official made under this section the public welfare official shall be deemed a preferred creditor."

Thus, DSS's claim for Medicaid reimbursement took priority over Eastchester's claim because Eastchester was relegated to the status of a general creditor.

Mental Hygiene Law § 81.44, enacted in 2008, is designed for the limited purpose of paying expenses incurred in administration of the guardianship. As the Sponsor's Memorandum notes, the statute

> "is designed to facilitate the transition between a guardianship for an incapacitated person and an estate after the death of such incapacitated person. It [clarifies] the rights of the personal representative of the estate to marshal guardianship funds and codifies the right of the guardian to retain a reserve to cover reasonably anticipated administrative expenses of the guardianship" (Sponsor's Mem, L 2008, ch 175, 2008 NY Legis Ann at 127).

In relevant part, subdivision (d) of Mental Hygiene Law § 81.44 provides that, within 150 days after the incapacitated person's death, the guardian must deliver the guardianship assets to the appointed representative of the decedent's estate,[2] with the exception of assets retained "to secure any known

---

**2.** Or, if no representative has been appointed, the public official notified of the death.

claim, lien or administrative costs of the guardianship *pursuant to [Mental Hygiene Law § 81.44 (e)]*'' (emphasis supplied).

Subdivision (e) of Mental Hygiene Law § 81.44, referred to in subdivision (d), provides that, unless the court orders otherwise, when the incapacitated person dies "the guardian may retain, pending the settlement of the guardian's final account, guardianship property equal in value to the claim for administrative costs, liens and debts." The majority interprets subdivision (e) to mean that the guardian should have retained the funds to pay Eastchester's bill because it was a "known claim . . . of the guardianship" as set forth in subdivision (d). But subdivisions (d) and (e), when read together, as they must be, limit the guardian's right to retain property equal in value only to the expenses connected with the administration of the guardianship, such as those itemized in the guardian's petition for a final accounting. Inasmuch as Eastchester's claim for services was unrelated to the administration of the decedent's guardianship, the guardian could not retain the funds to pay the claim under Mental Hygiene Law § 81.44 (d); rather, the guardian was required to turn the funds remaining after covering administrative expenses over to the personal representative of the decedent's estate.

As Supreme Court pointed out, if Eastchester had reduced its claim against the decedent to a judgment while she lived, the outcome of this proceeding might have been different, because DSS's statutory claim did not arise until her death, and earlier judgment creditors may have preferred rights against the estate (*see Matter of Pierce*, 106 AD2d 892 [4th Dept 1984], *lv denied* 64 NY2d 609 [1985]). However, as to the decedent's estate, Eastchester merely stands as a general creditor whose claim is subordinate to that of DSS (*see Matter of Swingearn*, 59 AD3d 556 [2d Dept 2009] [holding that right of DSS to recover payment of Medicaid benefits was conferred by statute and DSS became a preferred creditor having priority over nursing home, which had not reduced its claim to judgment]).

Despite the court's directive in the appointment order that after the decedent's death, the guardian could pay bills incurred while the decedent was still living, the guardian could not be given more authority than provided under section 81.44. The decedent's death terminated the guardian's authority to pay her debts to Eastchester and use the proceeds of the home sale to pay for her nursing home expenses.

Accordingly, after payment of administrative expenses, the remaining funds must be turned over to the estate representative for payment to DSS.

TOM, J.P., and KAPNICK, J., concur with ACOSTA, J.; FREEDMAN, J., dissents in a separate opinion.

Order, Supreme Court, Bronx County, entered on or about February 7, 2013, reversed, on the law, without costs, and petitioner is directed to turn over DSS's share of the balance of the guardianship account to respondent Eastchester Rehabilitation & Health Care Center. Appeal from order, same court, entered on or about May 30, 2013, dismissed, without costs, as taken from a nonappealable paper.